BAYOU METO DRAINAGE DISTRICT *v.* INGRAM.

Opinion delivered July 7, 1924.

1. DRAINS—DISTRICT LYING IN TWO COUNTIES.—Under Acts 1921, p. 388, amending Crawford & Moses' Dig., § 3607, the circuit court is given jurisdiction in cases where a drainage district embraces lands in more than one county.

2. DRAINS—EXTENSION OF BOUNDARIES.—Crawford & Moses' Dig., §§ 3625, 3628, and 3630, authorize a change of the plans of a drainage district and an extension of the boundaries to include benefited lands at any time before the completion of

the improvement as originally planned; and the improvement is not "completed" until the main channel of the ditch reaches the outlet, so as to carry. off the water.

Appeal from Lonoke Circuit Court; *George W. Clark*, Judge; reversed.

*Chas. A. Walls*, for appellant.

1. The alternative system of drainage districts as provided for in Crawford & Moses' Digest, §§ 3607-3654, authorizes the district to extend its boundaries so as to include the lands lying in Arkansas and Prairie counties. Section 3614 was complied with in every respect, and that section, together with sections 3625, 3628, 3629 and 3630, *Id.*, taken together, authorize the procedure contended for here. See also, with reference to the power of the circuit court to act, C. & M. Digest, § 3607, and act 353, Acts 1921, p. 390, amendatory thereof. The proceeding authorized by this statute does not relate solely to original proceedings. A careful consideration of the act will show conclusively that it was the intention of the Legislature to make such provision applicable at any stage in the proceedings. 11 Ark. 144. See also Acts 1913, p. 738; 103 Ark. 452; 85 Ark. 228; 89 Ark. 598; 117 Ark. 30; 121 Ark. 13; 145 Ark. 505; 130 Ark. 507; 142 Ark. 510; 115 Ark. 437; 86 Ark. 346; 147 Ark. 535.

2. Circuit courts of the State are the repository for all unassigned jurisdiction; and where a procedure is authorized, and no court given special jurisdiction, circuit courts have jurisdiction in such matters. This being true, even if the special statute did not authorize it, the circuit court would have inherent jurisdiction, under the provisions of the Constitution, to act the same as though the authority was expressly conferred. 111 Ark. 144; 96 Ark. 410; 104 Ark. 425; 161 Ark. 334.

*Pettit & Leach* and *John L. Ingram*, for appellee.

Reading sections 3607, 3613 and 3615, C. & M. Digest, in connection with 3614, it is clear that the latter section covers one of the preliminary steps in the formation of a district; that it has no application after final order confirming assessments has been made and entered; that it

authorizes the assessment of only such lands as might have been included in the original petition and order; that it authorizes the assessment of such benefits as accrue only by reason of the improvement as set forth in the original petition and order, and that it requires this assessment to be made and filed, together with the assessment of lands included in the original petition and order, before the final order confirming assessments of benefits is made. 103 Ark. 452. Neither that section (3614) nor section 3628 has any application to this proceeding. If it be conceded that section 3625 is applicable to the facts in this case, it can not be invoked in this proceeding because it has in no respect been complied with. 154 Ark. 335. But if this section had been fully complied with, it is not applicable to this proceeding. Its operation applies to lands lying only within the boundaries of the district. Under section 3629, relied on by appellant, if it was found necessary, the appellant could cut a ditch or drain across lands lying outside of the district, and could exercise the right of eminent domain to that end, but the cost of construction of such ditch or drain must be borne by the district, and not by lands across which such ditch or drain is constructed. Section 3630, relied on by appellant, presupposes a district fully formed, with its drainage system completed. Its object is to provide ways and means to preserve this completed system, and, to that end, it provides a procedure complete in itself. There is nothing in this statute having reference to lands other than the lands embraced in the district; nothing authorizing the extension of boundaries, and no language that could be so construed. The word "additional" in the phrase "levying of additional taxes," necessarily implies the existence of something to which something (in this instance, taxes) may be added. 53 Miss. 626. None of the cases cited by appellant support the contention that the district, the county court or the circuit court is authorized to extend the boundaries of the district in this proceeding. Two of the cases, 142 Ark. 510, and 155 Ark. 176, discuss the authority to extend the boundaries of a

district, but neither of them had under consideration this act, and they are therefore not in point.

McCULLOCH, C. J. The drainage district which is the appellant in this action is one formed in Lonoke County under the general statutes of the State providing for what is commonly termed the alternative system of drainage districts. Crawford & Moses' Digest, §§ 3607 *et seq.* The organization included a large area in Lonoke County for drainage purposes, and provided for the construction of a main ditch or canal running in a south-. easterly direction and emptying into the stream called Bayou Meto near the southeastern boundary of the county. Bayou Meto was to be the outlet for the flow of water from the end of the canal. Numerous lateral ditches were also provided for in the plans. The district was formed of lands lying entirely within the county of Lonoke, and the proceedings were had in the county court of that county. Plans were formed and approved, and assessment of benefits was made, a contract for the improvement was let, and bonds were issued. The work in accordance with the plans progressed nearly to completion. The main canal had been dug within a short distance of the southern termini, and all of the laterals were completed except two. It was then determined that, on account of the circuitous course of Bayou Meto below the end of the main ditch, and the lands on each side of it being low and swampy, the bayou was insufficient as an outlet from that point, and that it was necessary to extend the main ditch or canal a distance of about four and a-half miles, to reach another point on Bayou Meto where the banks were high, and that this would shorten the outlet from about thirteen miles, through which the water would have to flow by going around through the bayou, to four and a-half miles at the point to which the extended main ditch or canal would empty the water into the bayou. Plans were then formed by the commissioners for the extension of the main canal as an outlet, and also for an extension of the boundaries of the district so as to include the additional

lands which would necessarily be benefited by the extension of the main ditch. The report of the commissioners showing the altered plans and the assessment of benefits on the additional property to be added, which was about 8,000 acres in Prairie and 4,000 acres in Arkansas County, was filed with the circuit clerk of Lonoke County, and notice was given in accordance with the statute. After maturity of the notice, appellees, who are residents and owners of property in Prairie and Arkansas counties, appeared and filed their protest against the proceedings. On hearing the matter before the circuit court, it was decided that the court was without authority to make an order extending the bounds of the district and assessing the benefits to the lands in the other two counties. The court decided, however, that the district was entitled, under the statute, to condemn an outlet beyond the bounds of the districts as originally formed, and an appeal has been prosecuted in behalf of the district to this court.

The principal question to be decided in the case is whether or not there is authority in the statute for the change of plans and the extension of boundaries of the district so as to include other territory at the stage of the proceedings arrived at in the present instance. If the statute contains such authority, then the circuit court has jurisdiction to hear the proceedings, for the reason that it involves land lying in different counties, and the statute provides that in such case the proceedings shall be had in the circuit court. Section 3607, Crawford & Moses' Digest, as amended by the act of March 23, 1921 (Acts 1921, p. 388), provides, in substance, that, if land in more than one county is embraced in a district, "the application shall be addressed to the circuit court in which the largest portion of the lands lie, and all proceedings shall be had in such circuit court." The same statute provides that the circuit court shall apportion the costs between the counties in proportion to the benefits, that expenses incurred prior to the time when such assessment is made shall be apportioned between the counties, and that wher-

ever in the statute the words "county court" or "county clerk" are used, the words "circuit court" and "circuit clerk" shall apply in cases where the district contains lands in more than one county. This court, in the case of *Grassy Slough Drainage Dist.* v. *National Box Co.,* 111 Ark. 144, decided that the language of this section was sufficient to give the circuit court jurisdiction in cases where the district embraced lands in more than one county.

We turn then to the question whether or not, regardless of county lines, there is any authority in the statute for the extension of the boundaries of a district under circumstances found to exist in the present case. There are several sections of the drainage statute which have some bearing on the question of authority to do the things undertaken in the present instance. One of the sections of the statute (Crawford & Moses' Digest, § 3629) provides for the condemnation of a proper outlet for the drainage system, and that for that purpose a ditch or drain may be extended beyond the limits of the district; but that section may be put aside as having little bearing, for the reason that this is not merely a proceeding to secure an outlet. It is conceded by appellees that such an outlet may be obtained under the statute, and the circuit court so held, but it is sought in the present proceeding to extend the boundaries of the district so as to tax the land which will be benefited by the extension of the ditch. One of the sections of the statute provides that, on the assessment of benefits and damages after the formation of the plans, if it be found "that other lands not embraced within the bounds of the districts will be affected by the proposed improvement, they (the commissioners) shall assess the estimated benefits and damages to such land, and shall especially report to the county court the assessment which they have made on the lands beyond the boundaries of the district as already established." Crawford & Moses' Digest, § 3614. Other sections affecting the question involved read as follows:

"Section 3625. The commissioners may, at any time, alter the plans of the ditches and drains, but, before constructing the work according to the changed plans, the changed plans, with accompanying specifications showing the dimensions of the work as changed, shall be filed with the county clerk, and notice of such filing shall be given by publication for one insertion in some newspaper issued and having a *bona fide* circulation in each of the counties in which there are lands belonging to the district. If, by reason of such change of plans, either the board of commissioners or any property owners deem that the assessment on any property has become inequitable, they may petition the county court, which shall thereupon refer the petition to the commissioners hereinbefore provided for, who shall reassess the property mentioned in petition, increasing the assessment if greater benefits will be received, and allowing damages if less benefits will be received or if damages will be sustained. In no event shall a reduction of assessments be made after the assessment of benefits has been confirmed, but any reduction in benefits shall be paid for as damages, and the claim for such damages shall be secondary and subordinate to the rights of the holders of bonds which have heretofore been issued. From the action of the commissioners in the matter the property owners shall have the same right of appeal that is herein provided for in the case of the original assessment." Crawford & Moses' Digest.

"Section 3628. In case any land in any drainage or other improvement district is benefited, which, for any reason, was not assessed in the original proceedings, or was not assessed to the extent of benefits received, or in case any corporation, individual or other drainage district organized under this or any other general or special act, outside the limits of any district organized or operating under the terms of this act, shall drain land into any ditch belonging to any district formed or operating under the terms of this act, the commissioners of said drainage district shall assess

the benefits or the enhanced benefits received by such land, and the proceedings outlined in § 3613 for assessing benefits to lands not included within the boundaries of the district shall in all matters be conformed with; providing that this and the following section shall not operate to interfere with vested rights to natural drainage."

"Section 3630. The district shall not cease to exist upon the completion of its drainage system, but shall continue to exist for the purpose of preserving the same, of keeping the ditches clear from obstructions and of extending, widening or deepening the ditches from time to time as it may be found advantageous to the district. To this end the commissioners may, from time to time, apply to the county court for the levying of additional taxes. Upon the filing of such petitions, notices shall be published by the clerk for two weeks in a newspaper published in each of the counties in which the district embraces lands, and any property owner seeking to resist such additional levy may appear at the next regular term of the county court and urge his objections thereto, and either such property owners or the commissioners may appeal from the finding of the county court."

It is the contention of counsel for the district that these three sections last quoted clearly authorize the further proceedings sought to be undertaken, and we are of the opinion that counsel is correct in this contention. On the other hand, it is the contention of counsel for appellees that, in the first place, the statute does not authorize a change of plans and an extension of boundaries of the district after the approval of the original plans and the assessment and confirmation of benefits; and second, that, in the present instance, the improvement as originally planned and executed was substanially complete, and that the so-called additional improvement proposed by the changed plans is, in effect, a new and independent improvement. It is evident, from the broad and comprehensive language used by the law-

makers in framing this statute, and the numerous details set forth in the various sections, that it was intended to give every power necessary to complete drainage schemes. The statute clearly takes cognizance that a drainage scheme is ineffectual and incomplete unless the water is completely gathered up and an outlet provided for carrying it entirely away. In other words, the statute contemplates that a drainage ditch does not drain unless the water is taken care of and entirely carried away. So there is a clearly expressed purpose on the part of the lawmakers to authorize everything that is necessary to get the water off the land and into an outlet which will carry it somewhere into the open channel of a stream. Viewing the statute in that light, we think that the language of the sections referred to is sufficient to authorize a change of plans and an extension of the boundaries at any time before the completion of the improvement as originally planned, and that if, at any time before that point is reached, it is found that the scheme will prove abortive unless there be an extension, and that other lands will be benefited by such extension, further proceedings may be had to that end. A study of the language of § 3625 convinces us that the additional proceedings·are not confined to a period anterior to the approval of the original plans and the letting of a contract. The language shows that it contemplates that a change may be made after the original assessment, for it provides for a reassessment in case it is found that the change of plans renders the original assessment inequitable or insufficient. Section 3628 also shows that it was intended to authorize a change after the original assessment, because it provides for the inclusion of land entirely omitted from the original assessment. If the statute authorizes the change of plans and extension of boundaries after the approval of the original plans and the assessment of benefits, then it follows that it may be done at any time before the improvement is completed, for there is no other period in the proceedings at which the authority may be limited.

Counsel for appellees are mistaken in their contention that this improvement was completed; on the contrary, the proof shows that the main channel of the ditch was not quite complete so as to reach the proposed outlet, and that two of the lateral ditches had not been constructed. The scheme was not complete until the outlet was reached so as to fully discharge the water and provide for carrying it off. Nor was this extension of the ditch in any sense an independent improvement; it was merely an extension of the ditch according to the original plans, and constitutes an essential part of the improvement.

It is contended that this case falls within the decision of this court in the recent case of *Indian Bayou Drainage Dist.* v. *Walt,* 154 Ark. 335, but we do not agree that that case has any bearing on the present one. In that case the district had completed the improvement, and it was sought to change the plans so as to dig a parallel ditch, which constituted an independent improvement, and we held that the statute did not authorize that to be done. The proceedings there were sought under § 3670, Crawford & Moses' Digest, and, in disposing of the matter, we said: "It is a new improvement, not in the nature of extending, widening, or deepening the ditches that had been constructed according to the plans originally contemplated in the formation of the district. Specific authority for making an improvement of this character must be found in the law, and it is impossible to find in the language of § 3630, *supra,* giving the words 'extending, widening, or deepening,' their plain and natural meaning, any authority for the construction of a new and independent improvement, such as is shown by the facts of this record."

We have no occasion in the present case to deal with the question of assessment of benefits, or to determine from the facts whether or not there will be a benefit to the lands in Prairie and Arkansas counties which are to be included in the extended boundaries of the dis-

trict. The circuit court did not decide those questions, and it is not proper for us to do so now.

The circuit court erred in holding that there was no authority in the statute for the proceedings set forth in the petition and accompanying papers.

The judgment is therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

HART, J., not participating.